UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Respondent, | ) | |
| | ) | |
| v. | ) | No. 2:08-CR-102 |
| | ) | |
| | ) | |
| JONATHAN SHELL, | ) | |
| Petitioner. | ) | |

**MEMORANDUM AND ORDER**

This criminal case is before the Court on the motion of defendant for a reduction of sentence, [Doc. 1435]. Defendant requests a reduction in sentence pursuant to Amendments 782 and 788 to the United States Sentencing Guidelines. The United States has responded and acknowledges the defendant is eligible for a reduction in sentence but defers to the Court's discretion whether and to what extent to reduce defendant's sentence, [Doc. 1438]. The motion will be GRANTED in part.

**I. Factual and Procedural Background**

The defendant was convicted of participating in a conspiracy to distribute and possess with intent to distribute at least 100 kilograms of marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B). He was held accountable for 578 kilograms of marijuana, resulting in a base offense level of 28. The base offense level was decreased by three levels pursuant to USSG § 3E1.1(a) & (b) (acceptance of responsibility), resulting in a total offense level of 25. The defendant's criminal history category was I. The guidelines range was 57 to 71 months; however, defendant was subject to a mandatory minimum of 60 months imprisonment. In addition, the defendant was also subject to a consecutive mandatory minimum of 60 months for the firearms offense, for an effective range of 120 to 131 months. The United States filed a motion for

1

downward departure pursuant to 18 U.S.C. § 3553(e) and USSG § 5K1.1. The Court granted the motion and imposed a 90-month sentence of imprisonment (30 months for the drug offense and 60 months for the firearms offense), a fifty percent reduction below the drug offense's restricted guidelines range.

At the time of the entry of his guilty plea, the defendant stipulated to the following facts:

> a) Through the testimony of several witnesses, including co-conspirators, the United States would demonstrate, beyond a reasonable doubt, that between May of 2005 and July of 2008, in the Eastern District of Tennessee, the defendant did knowingly, intentionally, and without authority, conspire with at least one other· person to distribute and possess with the intent to distribute more than 100 kilograms of a mixture or substance containing a detectible amount of marijuana, a Schedule I controlled substance; and that the defendant possessed a firearm, namely a Smith & Wesson Sigma, .40 caliber handgun, in furtherance of the conspiracy to distribute and to possess with the intent to distribute marijuana.
>
> b) During the course of the conspiracy, the defendant obtained multiple pounds of marijuana which he then distributed in the Johnson City, Tennessee area.
>
> c) From approximately May of 2005 until May of 2007, on at least 50 separate occasions, the defendant obtained approximately 2 pounds of marijuana from co-defendants Jose Luis Colunga, Juan Javier Colunga, and Carlos Diaz, from a residence on Peachtree Street in Johnson City. Tennessee. The defendant admits that he further distributed that marijuana.
>
> d) From approximately April of 2007 until September of 2007, the defendant obtained bulk marijuana from co-defendant Jesus Huerta which he, the defendant, then further distributed. In total, the defendant obtained approximately 60 pounds of marijuana from codefendant Huerta during this time period.
>
> e) Between approximately July of 2007 and July of 2008, the defendant obtained bulk marijuana from co-defendant Wiley Barnett. In total, the defendant obtained approximately 520 pounds of marijuana from co-defendant Barnett during this time period.

2

f) In addition, the defendant admits that in April of 2008, he made a trip to Houston, Texas with co-defendants Huerta and Wiley Barnett. During the trip, the defendant and co-defendant Huerta went to a stash house located at 1806 Roxella and observed multiple pounds of marijuana transported from that residence. In addition, the defendant went to another stash house and observed co-defendant Flores-Delacruz arrive with a trailer that contained approximately 2,500 pounds of marijuana which was unloaded. The defendant and the others then went to co-defendant Graska's business where they discussed an RV which was going to be transferred into co-defendant Barnett's name. Co-defendant Barnett drove the RV to the stash house. The defendant assisted in loading approximately 700 to 80 pounds of the previously delivered 2,500 pounds of marijuana into the RV. The defendant and codefendant Huerta then followed the RV as it was driven by co-defendant Barnett back to Johnson City, Tennessee.

g) The defendant has been made aware that, on May 13, 2008. co-defendant Barnett was traveling north of Houston, Texas in an RV when he was stopped by an officer with the Texas Department of Public Safety for a traffic violation. Inside the vehicle, the officers found approximately 581 pounds of marijuana contained in black duffle bags marked with two silver stars. Co-defendant Barnett was arrested and given a bond. When he was released, co-defendant Barnett obtained one of the duffle bags, which was empty, from the towing company who had removed the RV from the side of the road. Co-defendant Barnett then purchased a Greyhound bus ticket back to Johnson City, Tennessee. The defendant further admits that co-defendant Barnett arrived at his, the defendant's apartment, in May of 2008 with a black duffle bag. Co-defendant Barnett left the bag at the defendant's residence.

h) On July 7, 2008, during the execution of a federal search warrant at the defendant's apartment in Johnson City, Tennessee, agents found a police scanner, a set of digital scales, approximately an ounce and a half of marijuana, $4,275.00 in U.S. currency concealed beneath his mattress, and a loaded Smith & Wesson Sigma, .40 caliber handgun, next to the bed. In addition, the agents found business cards for co-defendants Richard Wards and Raymundo Miller-Guerra, a suitcase with marijuana residue, and a black duffle bag marked with two silver stars with marijuana residue. Also in the black duffle bag agents found the Greyhound bus ticket in the name of Wiley Barnett from his trip back to Johnson City after the traffic stop on May 13, 2008.

3

> i) The defendant was advised of his rights and waived those rights. He admitted that he had been distributing marijuana since 2007 and that he possessed the Smith & Wesson Sigma, .40 caliber handgun. In addition, the defendant admitted that he had obtained approximately 263 kilograms of marijuana from co-defendants Huerta and Barnett.
>
> j) The defendant admits that he possessed the firearm for his personal protection which, among other reasons, included protection in the event that others attempted to rob him of his marijuana, money, and/or other property.
>
> k) In total, the defendant admits to approximately 578 kilograms of marijuana.

[Doc. 628].

## II. Standard of Review

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 131 S. Ct. 2685, 2690 (2011) (internal citation and quotation marks omitted). Title 18 United States Code § 3582(c)(2), however, gives a district court authority to modify a term of imprisonment that has been imposed on a defendant "who has been sentenced to a term of imprisonment based on a sentencing range that has been subsequently lowered by the Sentencing Commission," 18 U.S.C. § 3582(c), through a retroactively applicable amendment such as Amendment 782. *Id.*; USSG § 1B1.10. The Court may reduce the term, "after considering the factors set forth in § 3553(a) to the extent they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). Section 1B1.10 identifies the guideline amendments that may be applied retroactively, and sets out the factors for deciding a sentence reduction motion under § 3582(c). The Supreme Court has made clear that § 3582 does not require a sentencing or resentencing proceeding, but gives courts the power to reduce an otherwise final sentence under circumstances

4

established by the Sentencing Commission. *Dillon v. United States*, 560 U.S. 817 (2010); *United States v. Curry*, 606 F.3d 323, 330 (6th Cir. 2010); USSG § 1B1.10, cmt. background (noting that a reduction under § 1B1.10 is discretionary and "does not entitle a defendant to a reduced term of imprisonment as a matter of right").

Section 3582(c)(2) establishes a two-step inquiry: First, the court must determine whether the defendant is eligible for a sentence reduction. If she is, the court must then consider whether, in its discretion, the authorized reduction is warranted in whole or in part under the circumstances. *Dillon*, 130 S. Ct. at 2691-92; *United States v. Greenwood*, 521 Fed. App'x 544, 547 (6th Cir. 2013). In exercising its discretion, the court is required to consider public safety factors and is permitted to consider post-sentencing conduct in deciding whether a reduction in the defendant's term of imprisonment is warranted. USSG § 1B1.10, cmt. (n. 1(B)(ii)-(iii)). Thus, the district court is required to consider both the § 3553(a) factors and "the nature and seriousness of the danger to any person or the community that may be posed by a reduction in defendant's term of imprisonment." *Curry*, 606 F.3d at 330 (quoting USSG § 1B1.10, cmt. n. 1(B)(ii)).

One other factor is relevant to the instant motion. Ordinarily, a defendant's sentence may not be reduced to a term "less than the minimum of the amended guideline range." USSG § 1B1.10(b)(2)(A). But where, as here, defendant previously received a below-guideline sentence "pursuant to a government motion to reflect the defendant's substantial assistance to authorities," the Court has authority to grant a reduction "comparably less than the amended guideline range." USSG § 1B1.10(b)(2)(B). In addition, where, as is the case here, the defendant obtained a downward departure pursuant to 18 U.S.C. § 3553(e), "the amended guideline range shall be determined without regard to the operation of § 5G1.1 . . . and § 5G1.2." USSG § 1B1.10(c).

5

The relevant factors here demonstrate that a reduction is appropriate but that the reduction should be less than that requested by defendant. First is the seriousness of defendant's criminal conduct. The defendant was a substantial participant in a very serious conspiracy to distribute a very large quantity of marijuana. The defendant personally ordered large quantities of marijuana and distributed multiple pound quantities on numerous occasions. He participated in the conspiracy dealing in large quantities for a lengthy period of time. He helped obtain large quantities from places in Texas and attempted to smuggle those quantities to Tennessee. In addition, the defendant admitted to possessing a firearm during the commission of the drug offense, which significantly adds to the seriousness of the offense.

Protection of the public and necessary general deterrence are also significant factors which weigh against the requested reduction here, given the seriousness of the criminal conduct, the large amount of marijuana involved in the offense, and the possession of a firearm during the commission of the offense. One final factor also weighs against the full reduction sought by defendant. That is the one pointed out by the government response in this matter. The defendant faced a congressionally imposed 60-month mandatory minimum term of imprisonment as a result of his conviction on the drug offense. The only reason he escaped that 60-month minimum term, then or now, was the government's motion for downward departure based on substantial assistance. At the time of sentencing, the clear rule in the Sixth Circuit was that "only factors relating to a defendant's cooperation may influence the extent of a departure pursuant to § 3553(e)." *United States v. Grant*, 636 F.3d 803, 814 (6th Cir. 2011) (*en banc*). This Court reviewed the government's motion outlining the assistance provided by the defendant and concluded at the time that the sentence imposed reflected the extent of her cooperation. The policy bases upon which the Sixth Circuit premised its holding remain the same, even though the

6

defendant is now *eligible* for the reduction based on the amendment to the guidelines. Since the only way defendant escaped the congressionally imposed mandatory minimum was for substantial assistance to the government, it is perfectly logical that the extent of the reduction should be determined based on the extent of assistance.

As the government points out, a reduction to the level sought by the defendant would result in a 62 percent reduction from the mandatory minimum. Such a reduction is not warranted here under the circumstances outlined above. The Court will, however, in the exercise of its discretion, in light of the defendant's lack of disciplinary history during his incarceration and his post-sentencing efforts at rehabilitation, including participation in the non-residential drug program, grant some additional reduction in the case. Therefore, the defendant's motion is GRANTED, and her sentence will be reduced to a term of 83 months of imprisonment (23 months as to Count Three and 60 months consecutive as to Count Five).

This order is effective November 2, 2015.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE